Okay, please proceed. Thank you, Your Honor. This was one of the most unique cases that I've ever been involved in, in relationship to the contract administration of the case. The government knew at the beginning that there were serious defects in the technical data package that would prevent the contractor from performing. The contractor believed that there were serious defects in the technical data package and raised those with the government. The government contracting officer went to her technical people, and the technical people told the contracting officer that the technical data package was perfect. There's no problem with it. You can compete with it. Contract had been awarded. Performance couldn't begin because of problems with the technical data package. And there was just a litany of conversations between the contracting officer and the contractor. And, of course, I was involved in some of these as it went along. And we had an extreme difficulty getting the technical group to understand that there were problems with the technical data package. Other than these conversations back and forth, though, there really wasn't anything that was done in terms of performance under the contract because, as you said, it was clear from the beginning that there were technical problems, right? Correct. So how did we get to a $7 million claim? Well, the first part with respect to the claim was the purchase of all the parts which the contracting officer had approved prior to the award of the contract. There were a number of long lead items that were required, and it was $300,000 or $400,000. And that was what the terminating contracting officer, Mr. Slimans, awarded in his contracting officer final decision. The other part of the claim deals with the wheel spinning costs that the contractor went to, my client went through, in order to accommodate all of these potential fixes that the government had proposed. The technical people were trying to get this contract performed, and we were trying to perform it. We spent an enormous amount of time in that process. All that has been audited. The government disputes that we were entitled to the additional money, but that's not the issue that we have in the case here. The issue in the case here is the statute of limitations. And with respect to the statute of limitations, it's my contention that there was no impasse, which is required. An impasse is required. There was no impasse until sometime in 2005. We filed originally with Mr. Slimans after there was a termination for convenience. The government discovered that there was serious defects in the technical data package. Technical people finally admitted it and finally gave the contracting officers the advice that they needed. But is an impasse required? Yes. What's your case law to support that proposition? I'm sorry? What's the case law that you have to support that proposition? That impasse is required. We cited it in our brief, Your Honor, and I believe that Well, there's case law that says that an impasse is required in certain circumstances, but I haven't seen anything in the context of equitable adjustment claims. Are you saying that an impasse is required to convert an equitable adjustment claim into a claim for purposes of appeal? In order for us to be able to file a statute of limitations regulation in the FAR, it essentially says that you have to have all of the things necessary to file a claim. That's what the statute of limitations says. Six years begin to run from the point at which everything is fixed, that the contractor knows that they have a right to file a claim. For us to be able to file a claim with respect to the statute of limitations, we have to have an impasse. What we've had is a number of circumstances where we have continually asked for a termination for convenience. Termination for convenience is finally granted. So until we have the situation where the contracting officer, Mr. Slemons, makes a final decision, says you're not entitled to anything else, that's where the impasse arises. And once that impasse arises, the statute of limitations begins. What this case is about at this juncture is strictly an issue with respect to the statute of limitations and whether or not we would have a right to ultimately appeal to the Board of Contract Appeals. We contend that until Mr. Slemons made that contracting officer final decision, there was no impasse. The board judge selected some date back in 2000 or 2001, February 13th, 2001, based on a draft letter that was submitted in discovery. The draft letter, and I'll admit because I participated in it, there was a lot of harsh correspondence that went back and forth between the parties. But as the case proceeded, I was fortunate enough to have the opportunity to talk with one of the lawyers at AMCOM, a gentleman named Wes Smith, a fellow that I know, and Wes and I worked and worked and worked and worked and finally got the technical guys to go back and look at this technical data package. Mr. Ferris had testified that anyone with reasonable intelligence knew or should have known at the beginning of the contract that this contract would be impossible to perform. So once that occurred, the contract was terminated for convenience. We submitted a termination settlement proposal and Mr. Slemons settled a portion of it. That's where the impasse began. And what date then are you relying on for those events? That date was, I believe, March the 25th, 2005 was the date of Mr. Slemons' contracting officer final decision. But the claims then weren't, the equitable adjustment claim wasn't filed until 2008, isn't that right? Right, but if the statute of limitations began in March of 2005, the filing in 2008 is within the 6-year statute of limitations. Let's take these things one at a time. So you've got the settlement termination claim. Now that, you're admitting, was decided in March of 2005. Mr. Slemons decided that in 2005. However, the issue, we filed for a contracting officer final decision. We got a contracting officer final decision and we went to the United States Court of Federal Claims. In the United States Court of Federal Claims, the government argued that we had failed to present any of the claims to the contracting officer. Consequently, the Court of Federal Claims did not have jurisdiction. They argued that in court. That was in their motions. We opposed their motions. I had discussions with a Justice Department lawyer and she convinced me that all of the claims had not been properly presented. Even the termination settlement claim? No, the termination settlement claim, the portion of the termination settlement claim that was settled was not an issue. In that case, the portion that was not settled is part of our new claims that were filed in the United States Court of Federal Claims. The equitable adjustment claims? Yes. Delay claims, bad faith claims, etc. After it was filed in the United States Court of Federal Claims, as I said, the government argued that there was no jurisdiction because it had not been presented to the contracting officer. And that is jurisdictional, as this court well knows, with the United States Court of Federal Claims. I went back, I looked at it, and I agreed. We had not properly presented the claims to the contracting officer for a final decision. As a result of that, there was a joint stipulation of dismissal based on a lack of jurisdiction of the Court of Federal Claims. Now, I want to point out, and I believe that's in the appendix, I want to say 281 or something like that. You got that cite? Yeah, 316? Okay, thank you. It is 316. This is not a request for a voluntary dismissal. It is a joint stipulation by the United States and by myself that the Court of Federal Claims does not have jurisdiction. It's not just me asking for a voluntary dismissal. So in any event, it is a joint dismissal. Government joined in the joint stipulation of dismissal. So when you went back to the contracting officer, was this the first time that the contracting officer had been asked to render a final decision on all of the things that everyone was arguing about? Right, that's correct, on all of the claims. Now, our position with respect to Mr. Sliman's original contracting officer final decision, he was the terminating contracting officer. He was not the procuring contracting officer. The regulation that the government cited and we cited in our brief provides essentially that a terminating contracting officer only has the authority to settle a claim within the contract price. And in this instance, the contract price was somewhere in the neighborhood of $400,000. We had submitted a claim to Mr. Sliman's for $700,000 or $800,000, the $700,000 range. Our position is that since he had no authority to settle a claim over the contract price, he had no authority to settle any portion of this claim. He lacked authority by virtue of the regulations, and the procuring contracting officer never gave him the authority to settle the entire contract claim. He didn't have authority to settle it. He couldn't settle the part he agreed to, and he couldn't settle the part that he denied, which was over the contract price. So I treat, it's my theory, that the contracting officer final decision is essentially a nullity with respect to any appeal rights that we have. So we took all of the other, all of the claims, including every claim that was submitted in this, every claim that we thought was submitted. We went back to the procuring contracting officer at AMCOM and submitted all of those claims. Contracting officer reviewed the claims and denied those claims. We then appealed to the Board of Contract Appeals within the statutory 90-day period, which is what gets us here. That case was reviewed by Judge Freeman. Judge Freeman decided that because there was essentially an impasse in February of 2001, we were beyond the statute of limitations when we submitted to the contracting officer in 2008. Did the contracting officer in 2008 say that this is over, there's nothing to be done or said? No, the contracting officer didn't raise that issue. The contracting officer undertook to submit a contracting officer final decision. It's in the appendix, and that is the decision that we believe that we properly appeal from to the Board of Contract Appeals within the 6-year statutory period. If you take the, Mr. Freeman's decision, there's no basis to create an impasse in 2001. This was a continuing process of an attempt to negotiate from the beginning to the end, and we ultimately got to a stage where we did negotiate. Okay. Thank you, Mr. Riggs. Thank you, Your Honor. Mr. Rigner. Thank you. May it please the Court, there are two separate claims that are at issue here. One is the termination settlement claim. The other one is the equitable adjustment. Both are jurisdictionally defective, but for different reasons, so I'm going to treat them separately. Starting with the one that was filed first, the termination settlement claim, the reason why that one cannot be pursued at this stage is because it was not pursued after the original opportunity at the Court of Federal Claims. What happened factually is that when the contract was terminated for convenience, the contractor submitted a termination settlement proposal, which was not at that time a claim. Subsequently, the contracting officer in March of 2005 issued a final decision. This is the termination contracting officer issued a final decision. So they were too late. I mean, by the time they got to the Court of Claims, it was past the 90 days for the board, right, on termination? That's right. They were timely at the court, but not at the board. Right. So then they get to the board. Their time is run. The parties stipulate to dismiss the case, not in the manner that counsel has described. They were two different parts to that stipulation of dismissal based on the government's argument. And what the government had done in that case was filed a motion both for dismissal or in the alternative for summary judgment. But why was the lack of jurisdiction? I mean, that stipulation says where we both agree for want of jurisdiction, this case should be dismissed. Well, the stipulation is a little more nuanced than that. And what the government had filed for lack of jurisdiction under 12B1 was with respect to the equitable adjustment or not the equitable adjustment side of the claim but the non-termination claims, the bad faith and so forth. The stipulation reflects the motion that the government had filed. In paragraph 1 of the stipulation, it says the government filed its motion to dismiss or an alternative for summary judgment based in part on the premise that the court did not have jurisdiction. That's paragraph 1 of the stipulation. But are you saying that the government entered all of this with its fingers crossed, that there are other things that we're not going to tell you about that we think are not included in the stipulation that we'll raise later in order to end the possibility of a claim? No, I don't think so. The government, I think it was quite direct in what it was doing. It was based on the motion to dismiss that it filed. At this stage in the litigation at the Court of Federal Claims, the dismissal by the plaintiff had to be with the concurrence of the government because we're now under Rule 41 and the motions to dismiss have been filed. So the plaintiff can no longer unilaterally dismiss the case. But the stipulation seems to indicate that the government is agreeing that there's no jurisdiction over anything. And if you thought that there was jurisdiction over the settlement termination claim and that, in fact, by this dismissal he would be forever barred from any settlement, why didn't you state that in the stipulation? Well, I don't think that it's quite as far-reaching as the Court just described. The stipulation is only talking about with respect to jurisdiction from the government's viewpoint because the stipulation sets out both parties' viewpoints. The government's viewpoint was that, as described in its motion to dismiss, which was only some of the claims have jurisdictional problems, and then the remainder were based on a Rule 56 motion. And then in paragraph 4, the plaintiff recites its view, which is that the plaintiff has discovered the belief that the termination contracting officer didn't have jurisdiction, and so the parties agree to dismiss. Well, let me move you, if I could, to the other claims, the non-termination. Yes. Because that's the bulk of these claims here. Yes. So if I understand his argument correctly, the government says you've got to dismiss for lack of jurisdiction because the contracting officer didn't consider this. That's right. And then he goes back to the contracting officer, and the contracting officer considers it, and then he goes to the CDA and they say, whoops, wait a minute, you went to the contracting officer too late. You couldn't go back in 2005 or 2008 or whatever. You should have gone to the contracting officer in 2001. No, within six years after 2001. In 2007, as late as 2007, SDC could have submitted its claims to the contracting officer, but instead it waited until 2008, more than six years after the accrual of its claims. And it was 2007. So the government's position is after we entered into this joint stipulated dismissal, there still would have been time for them to go to the contracting officer and have a timely claim. On the equitable adjustment side. Yes. Because there's really two things going on here. There were the equitable adjustment claims that were thrown in with the Court of Federal Claims suit, and that was a much different set of claims than what you see in the equitable adjustment that was submitted in 2008 by a magnitude of 10, right? I mean, what was submitted there is a $7.5 million equitable adjustment claim. There's no whiff of that any day before 2008. What was happening at the Court of Federal Claims was a much smaller situation. But regardless, if you said – But if you're saying that in 2001 everything was over, even though they were continuing all of these negotiations and all else, if they had gone saying, well, this is final in 2001, wouldn't the government have said this is ridiculous? We're in the midst of negotiations. No, I may have misspoke. What the government's position is is that the claim accrued in 2001, and that started the six-year limitation. But what's the accrual of a claim? You have to have all of the elements final, finished, so that you could go into a court or a board. And you're saying that they could have done that in 2001, even though they had barely begun the negotiations? Yes, they could have. And the fact that negotiations – They should have, and that the situation – And if they had filed suit in 2001, you think that the government would not have said this is premature? Or within six years of 2001, they should have filed their claim with the contracting officer. When the statute of limitations starts to run is the date from which they could have taken legal action. That's right. Is that right? That's right. And while they could have submitted their claim under the Contract Disputes Act, they have to go through both stages for their equitable adjustment claim. So first they have to submit to the contracting officer. Once they get the contracting officer's decision or there's a deemed denial. What triggers the statute of limitations, going to the contracting officer or going – what's – There's two limitations in the Contract Disputes Act, and they apply to each of these claims separately. When we're talking about the equitable adjustment claim, we're talking about the six years between accrual of the claim and presentation of that claim to the contracting officer. Is impasse needed for accrual? No. The impasse only applies to the settlement termination claim, because under the Ellett case, what the court – what this court said was that a settlement termination claim is not itself – or proposal is not itself a claim because it's missing one element, and that is a request for a contracting officer's decision. Once the parties reach an impasse on the settlement – the termination settlement claim, the – and which is usually indicated by the contracting officer's decision. That's the take it or leave it or go to another board or court. Once that occurs, then you have the accrual of limitations there. That's on the termination settlement side. On the equitable adjustment side, we're just under a plain vanilla Contract Disputes Act claim, which is presented to the contracting officer within six years of accrual and then take it to the board or the court in the appropriate period of time thereafter. You're saying six years from accrual, not six years from the decision of the contracting officer? No, no. Six years from accrual of the claim, it has to go to the contracting officer for decision. In that period of time, the board found began – ran in November of 2001. There's certainly a basis to find it ran earlier, but it's not necessary for this analysis. Because the settlement negotiations over the ensuing two years failed. No, no. Therefore, retroactively, the claim was complete? No, no. The settlement negotiations are wholly separate. We assume in the Contract Disputes Act, assumes parties are going to negotiate, even through proceedings at the Court of Federal Claims and even before this board. Counsel and I could have spoken on the phone yesterday and say, let's go ahead and settle the claim. But for purposes of getting jurisdiction in either the board or the court, it has to be presented to the contracting officer. And decided by the contracting officer. Well, it has to be presented within six years and then decided by the contracting officer within the time limits of the Contract Disputes Act, or not at all. And then it can be appealed as a deemed denial. And so – but the critical period of time here for the equitable adjustment claim is once the claim accrued, as the FAR defines, they know they've been damaged. They don't actually have to have damage, but they know they've been damaged, which the board found occurred in November of 2001. The six-year clock started. And what didn't happen was any time during those six years, the contractor – and it's a very simple and easy thing to do – could have submitted those claims to the contracting officer for decision. They sat on their hands. They allowed six and a half years to pass. And their rights went away. So they are barred by the statute of limitations on the equitable adjustment claim because of that. What about the November 2004 communication where they specifically said that they were entitled to more than the contract price via an equitable adjustment? That's not sufficient? It is not sufficient because it's not a claim. That was part of the – it was buried in, I think, one of the termination letters. It was 2004. You said, yes. And what would have had to have happened there under the Contract Disputes Act in order for that to be a claim, it would have had to have met all the requirements, asked for some certainty as a matter of right and so forth, but then also asked for a contracting officer's decision on that equitable adjustment, and that's not what happened. Now, remember, there's two sets of equitable adjustment claims. That was the smaller one that was being bantied around in the 2004 time period. What is being claimed now in 2008 is a completely different animal. It's a $7.5 million claim of issues that were never raised prior to that period of time. Are you contending that we have case law that specifically says that an impasse is not necessary in connection with an equitable adjustment claim, or you're just saying it's never – it would never apply to an impasse? It can't possibly apply. I guess I can't see why you'd ever get to that circumstance because the impasse is necessary under the Ellett case to turn a settlement termination proposal into a claim. On an equitable adjustment, there's nothing ever to turn into a claim. It just has to be a claim. It has to meet the very plainly stated requirements in the Contract Disputes Act and the FAR, which are that you submit a claim for some certain and ask for a contracting officer's decision. There's no need to inject a discussion of an impasse because the Contract Disputes Act already tells you what it is that you have to submit, but it's unclear under the FAR for a termination settlement proposal. That was vague, and this Court needed to straighten that out, but you'd never have that problem for an equitable adjustment claim. So I couldn't envision a case where you'd need to – where this Court would need to opine that an impasse is irrelevant to – So if he had gone to the contracting officer in 2001, the contracting officer wouldn't have said we can't accept your claim. It's premature because the negotiation is ongoing. No, the contracting officer would have had to have issued a decision, and it would have been decided many years ago, but that's not what happened. And so the basic point here is there's two separate claims. They're both defected for different reasons, and it's important to track them separately and to look at the time periods for each separately. And to the extent that there would be any inequity here, there simply isn't. Obviously, you can't look at that for purposes of the Contract Disputes Act. However, it was really always in the hands of the claimant here. If they wanted to bring a $7.5 million claim in this $400,000 contract, they could have done it. All they had to do was write a letter to the contracting officer, tell them about it, and ask for a decision. They never did that until the time had come and gone more than six years later. And for those reasons, we ask that the Court affirm the decision of the Board. Okay. Thank you. Thank you, Mr. Wagner. Mr. Riggs. Thank you, Your Honor. Every time we went to the contracting officer with complaints about the technical data package, we got the opportunity of a solution. On one occasion, the government was going to provide some of the parts that were proprietary to Raytheon. They couldn't provide the parts. They suggested that we go to a company that had built these parts. What time frame are we talking about? This is in the 2000 to 2003 time frame. One of the issues that got resolved in 2003 was the status of the drawings. What we actually had was a set of Mylar drawings that had been Xeroxed rather than prepared in the way Mylar drawings are prepared. Mylars are, and I'm sure you all know this, that Mylars are patterned drawings. You put them in the machine and the machine follows everything. If you Xerox it, it has imperfections on the drawing and the machine doesn't know how to do it. We tried for three and a half years to actually show them the drawings. They finally came to my office in August of 2003. We laid the drawings out and they all said, well, my God, these are Xerox drawings. These things won't work. That's the point at which we got to the point where we would at least be able to get a termination for convenience in the case. If I had taken this to the contracting officer in 2001 and said, I want to submit a claim at this stage, the contracting officer would have looked at me and said, this is premature. We're working with you. We're trying to solve this problem. We can get this contract performed. We want you to perform this contract. So from that perspective, the idea that there was a point in time earlier than 2004, 2003, 2005, that we could have presented a claim is just simply ridiculous. So you're saying that sometime in 2003 the claim accrued, but that major 2008 equitable adjustment claim, timely. Yes. If we had a, and we were still working toward a solution in 2003, there was almost an immediate termination for convenience based on the discovery of the defects in the drawings. We submitted our termination settlement proposal and I'll admit it obviously on the record, that I inartfully tried to include a claim for the defective specifications and other things, which were not properly included in the termination settlement proposal. Now, one of the other issues that I think is really important here is that all of the claims that I submitted in the 2008 equitable adjustment claim were not submitted earlier. Those claims are timely. So what Judge Freeman has done is essentially kicked me out on the statute of limitations on all of these claims that weren't presented to the terminating contracting officer for which we dismissed the court of federal claims case. We went back, did our homework, came back with a pretty solid claim that the contracting officer denied. So all, by this termination, this idea that we're outside the statute of limitations, I'm getting excluded from the opportunity to present all the claims that were not properly presented before and were not properly before the contracting officer. If you thought you were entitled to an equitable adjustment claim all the way back in November of 2004, why didn't you file a certified claim at that point? We actually certified the termination settlement proposal. Right, but not the equitable adjustment claim. Well, that's my fault. I mean, I was trying to file a certified claim for everything that we were entitled to, including the termination settlement proposal. You can include all of your other claims in a termination settlement proposal. This contract had been assigned to Mr. Slemons to settle the termination of this contract. I didn't know he didn't have the authority to settle the rest of it. But because of the adventure in the court of federal claims, we ultimately ended up submitting our later claim in 2008, which included all of our claims. Thank you, Your Honor. Okay, thank you. Thank you both. The case is taken under submission. All rise.